AO 106 (Rev. 04/010) Application for Search Warrant    AUTHORIZED AND APPROVED/DATE:    s/Allison Christian 2/29/24

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF OKLAHOMA

In the Matter of the Search of )
)
PROPERTY KNOWN AS: ) Case No: M-24-188-SM
a black Samsung cell phone with )
IMEI Number 355796467922310 and )
Assigned phone number of 405-482-2877 )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*: **See Attachment A, which is attached and incorporated by reference.**

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B, which is attached and incorporated by reference.**

The basis for the search under Fed. R. Crim.P.41(c) is*(check one or more)*:
☒ evidence of the crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2) | Distribution and/or receipt of child pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of and access with intent to view child pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Andrea Salazar, Homeland Security Investigations, which is incorporated by reference herein.

☒ Continued on the attached sheet(s).
☐ Delayed notice of [No. of Days] days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Andrea Salazar
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: 3/1/24

*Judge's signature*

City and State: Oklahoma City, Oklahoma    Suzanne Mitchell, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Andrea Salazar, being first duly sworn, state as follows:

### INTRODUCTION

1. I am currently employed as a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been so since July 2022. Prior, I was a federal police officer with Pentagon Force Protection Agency and had been so employed since August 2019. I hold a bachelor's degree in criminology and a Master of Public Administration from St. Mary's University. I also hold a Master of Science in Criminal Justice from Sam Houston State University.

2. I am currently assigned to HSI Office of the Resident Agent in Charge ("RAC") Oklahoma City, Oklahoma. As part of my various duties and responsibilities, I investigate federal criminal cybercrime violations. As it relates to cybercrime, I have gained experience conducting child exploitation and child pornography investigations. My working experience has been augmented by training I received at the Federal Law Enforcement Training Center. Moreover, I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal investigators. I have become aware of numerous examples of child pornography. Additionally, I have had the opportunity to observe and review hundreds of images and videos of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 2252 and 2252A, and I am authorized by law to request a search warrant.

3. I am investigating the online activities of Jerry NGUYEN ("NGUYEN"). As explained herein, there is probable cause to believe NGUYEN attempted to distribute and/or

receive child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and possess and/or child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

4. This Affidavit seeks authorization to search NGUYEN's black Samsung cellular phone, with IMEI Number 355796467922310 and assigned phone number of 405-482-2877, further described in Attachment A (the "**SUBJECT DEVICE**"), and seize the items described in Attachment B, which constitute instrumentalities, fruits, and evidence of the aforementioned crimes.

5. This Application would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data, particularly that described in Attachment B.

6. The **SUBJECT DEVICE** is currently secured at the HSI RAC Oklahoma City office, evidence control room, located at 3625 NW 56th St. Suite 300, Oklahoma City, OK 73112. As set forth herein, there is probable cause to believe that NGUYEN possessed, owned, and used the **SUBJECT DEVICE** to commit the aforementioned crimes.

7. The facts set forth in this Affidavit are based upon my personal observations and training, prior investigations and, where noted, information related to me by other law enforcement officers. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

8. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on devices. This information can sometimes be recovered with forensics tools.

9. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases, cellular telephones maintain photographs of illegal activities. These photos are sometimes stored in cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

10. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications, as well as applications like Instagram. Additionally, individuals utilize their cellular devices to take and store pictures and keep notes. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual.

11. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during, and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos,

address books, records, phone call histories, contact and other information.

12.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the aforementioned crimes, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

13. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques (including but not limited to computer-assisted scans of the entire medium) that might expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

14. *Manner of execution.* Because this warrant seeks only permission to examine the **SUBJECT DEVICE** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause to authorize execution of the warrant at any time in the day or night.

15. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the **SUBJECT DEVICE**. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon

to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. "Computer" refers to any electronic, magnetic, optical, electrochemical, or other high-speed data processing device capable of performing logical or storage functions and includes any data storage facility or communications facility directly related to such a device. As used herein, "computer" also incorporates digital devices that complete these same functions, such as smartphones, tablets, connected devices, and e-readers. *See* 18 U.S.C. § 1030(e)(1).

   b. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back

audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location.

These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some

computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I believe that the **SUBJECT DEVICE** has capabilities that allow it to serve as a wireless telephone, computer, digital camera, portable media player, GPS navigation device, and tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## STATEMENT OF PROBABLE CAUSE

18. In February 2023, Special Agent ("SA") Ivan Murray of Homeland Security Investigations ("HSI") in St. George, Utah, was contacted by St. George Police Department ("STGPD") regarding an individual attempting to sell and distribute CSAM to other social media users. On February 16, 2023, Detective Randall sought and obtained a State of Utah search warrant (No. 2597111) for information relating to KIK user "sexymee027." In response to the warrant, Medialab.ai Inc. provided information associated with the account including BSI, IP address information, and chat logs showing who "sexymee027" had distributed CSAM images and videos to through KIK messenger. Chat logs revealed "sexymee027" communicated with over 200 KIK users, most of whom he delivered suspected CSAM. One of the accounts that "sexymee027" connected to was KIK account of username "JerBear405."

19. "JerBear405" KIK account subscriber data also revealed an IP address: 68.229.243.252 (the "Subject IP Address"). On July 26, 2023, HSI Cleveland issued an administrative subpoena to Cox Communications for data related to the Subject IP Address. On August 5, 2023, Cox Communications, Inc. responded that the subscriber on the account was NGUYEN with an address of 11700 N Walker Ave, Oklahoma City, OK 73114 (the "SUBJECT PREMISES"), a phone number of (405) 482-2877, and an email address of jnguyen5254@yahoo.com (the "Subject Email Account"). The account has been active since July 20, 2017, and continues to be active.

20. On February 1, 2024, HSI Oklahoma City and the Oklahoma City Police Department ("OCPD") executed a search warrant on a residence maintained by NGUYEN. The search warrant, signed by U.S. Magistrate Judge Amanda Maxfield Green on January 24, 2024, was executed at 6:00 a.m. at the SUBJECT PREMISES.

21. Just prior to the execution of the search warrant, surveillance showed NGUYEN leaving the SUBJECT PREMISES at approximately 5:50 a.m. Accordingly, because NGUYEN left the SUBJECT PREMISES before the search warrant was executed, HSI agents instructed OCPD to conduct a traffic stop because it was reasonable that NGUYEN had his cellular phone on his person. Once they made contact with NGUYEN, they asked him to exit the vehicle. The **SUBJECT DEVICE** was in plain sight in the cup console near the driver's seat. The **SUBJECT DEVICE** was then taken from NGUYEN's vehicle and checked into the HSI RAC Oklahoma City office, evidence control room, located at 3625 NW 56th St. Suite 300, Oklahoma City, OK 73112

22. During the search of the SUBJECT PREMISES, law enforcement seized approximately thirty-two different electronic devices, including several computers and electronic storage devices.

23. Additionally, in post-Miranda statements to law enforcement, NGUYEN admitted that he had received child pornography images through KIK, and he uses his phone for online activities—including accessing KIK.

## CONCLUSION

24. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits, and instrumentalities of these offenses, more fully described in Attachment B, are on the **SUBJECT DEVICE** described in Attachment A. I respectfully request this Court issue a search warrant for the **SUBJECT DEVICE** described in Attachment A to seize the items described in Attachment B.

Andrea Salazar
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this 1st day of ~~February,~~ MARCH 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant seeks to search NGUYEN's black Samsung cellular phone, with assigned phone number of (405) 482-2877 and IMEI number 355796467922310 (the "**SUBJECT DEVICE**"). The **SUBJECT DEVICE** is currently secured at the HSI RAC Oklahoma City office, evidence control room, located at 3625 NW 56th St. Suite 300, Oklahoma City, OK 73112, and it is depicted below:



## ATTACHMENT B

## <u>LIST OF ITEMS TO BE SEIZED</u>

All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of the aforementioned offenses:

### I. <u>Digital Evidence</u>

1. Any passwords, password files, test keys, encryption codes, or other information necessary to access the **SUBJECT DEVICE**;

2. All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device described in Attachment A, that show the actual user(s) of the computer or digital device during the time the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the device; MAC IDs and/or Internet Protocol addresses used by the device; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software; evidence of the absence of such malicious software, or of the presence or absence of security software designed to detect malicious software;

3. Evidence that the device was attached to or used as a data storage device for some other device, or that another device was attached to the device; and

4. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital device;

## II.  Records, Documents, and Visual Depictions

5.   Any records, documents, or materials, including correspondence in support of the search warrant application in any form including Instagram, or any other social media platform;

6.   Any records, documents, or materials, including any correspondence, that involve any communication with any person that appear to be coercive in nature for the purposes of grooming or obtaining images from any person;

7.   Any records, documents, or materials, including correspondence, that pertain to the production, transportation, distribution, receipt, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

8.   All originals and copies (physical or digital) of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

9.   Any motion pictures or digital video clips of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; video recordings which are self-produced and pertain to sexually explicit images of minors; or video recordings of minors which may assist in the location of minor victims of child exploitation or child abuse;

10.  Any records, documents, or materials which include offers to transmit, through interstate commerce by any means (including by computer), any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

11.  Any records, documents, or materials relating to the production, reproduction, receipt, shipment, trade, purchase, or a transaction of any kind involving the transmission, through interstate commerce (including by computer), of any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

12. Any records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

13. Any records of Internet usage, including records containing screen names, usernames, and e-mail addresses, and identities assumed for the purposes of communication on the Internet on any app installed on the **SUBJECT DEVICE**;

14. Any records, documents, or materials referring or pertaining to communications with others, whether in person, by telephone, or online, for the purpose of distributing or transporting child pornography, including chat logs, call logs, address book or contact list entries, digital images sent or received;

15. Information or evidence of any websites visited, photographs, videos, images, reports, definitions, stories, books, music, lyrics, emails, videos, messages, and/or notes associated with child pornography or those who collect, disseminate, or trade in child pornography; and

16. Any records, documents, materials, videos, or photographs that would allow investigators to ascertain who used the **SUBJECT DEVICE**.

As used above, the terms records, documents, programs, applications or materials includes records, documents, programs, applications or materials created, modified or stored in any form including digital or electronic form.